SENTENCIA
Mediante este recurso se nos solicita que revoquemos una sentencia emitida por el Tribunal de Apelaciones, en la cual se invalidó el proceso de recusación de ochenta y cuatro electores por razón de domicilio, debido a la publicación con tan sólo un día de retraso de los edictos relativos a este proceso. Según se deduce del apéndice a la petición, esa dilación fue el resultado de la falta de espacio y disponibilidad del periódico El Vocero de Puerto Rico, ante el gran volumen de edictos sobre recusaciones que se recibió durante el período en controversia.
Por entender que el foro apelativo erró al revocar la determinación del Tribunal de Primera Instancia, Sala Superior de Aibonito, el cual encontró justa causa para esa tardanza, luego de la celebración de una vista evidenciaría, revocamos el dictamen recurrido.
I
El Partido Popular Democrático (PPD) inició un proceso de recusación de ochenta y cuatro electores del Precinto 066 del Municipio de Orocovis, por razón de domicilio, en conformidad con lo dispuesto en la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977 (16 L.P.R.A. see. 3001 et seq.). Como parte del proceso, el PPD procedió a notificar personalmente a los electores sobre las distintas solicitudes de recusación, con el fin de que éstos comparecieran a una vista ante la Comisión Local de Elecciones de Orocovis. Sin embargo, como esas gestiones no tuvieron *942 éxito, el PPD le solicitó al Presidente de la Comisión Local su autorización para realizar la notificación mediante la publicación de edictos, según lo permite la Sec. 2.12 del Reglamento para el Trámite de Recusaciones de la Ley Electoral, Comisión Estatal de Elecciones, 13 de noviembre de 2007, págs. 14-15.
Examinada esta petición, el 20 de mayo de 2008 el Presidente de la Comisión Local autorizó la notificación mediante edictos, para lo cual el PPD contaría con un término de diez días reglamentarios. Luego de realizar los trámites administrativos dirigidos a pagar los costos de su publicación, el PPD envió los edictos al periódico El Vocero de Puerto Rico el 28 de mayo de 2008, con el fin de colocarlos en la edición de 30 de mayo de 2008, fecha límite para realizar la notificación. No obstante, a pesar de presentar su solicitud en el término reglamentario correspondiente, El Vocero de Puerto Rico le notificó al PPD el 2 de junio de 2008 que la publicación de los edictos no pudo realizarse en la fecha señalada, debido a la gran cantidad de recusaciones sometidas para publicación. En cambio, ésta se realizó el 31 de mayo.
Así las cosas, en la fecha pautada para la celebración de la vista de recusación, el presidente de la comisión local determinó que la notificación mediante edictos fue ineficaz, pues se había realizado con un día de retraso. Por tal motivo, la vista de recusación no pudo llevarse a cabo, aun cuando varios de los electores recusados comparecieron a ella. De esa determinación el PPD recurrió ante el Tribunal de Primera Instancia, Sala Superior de Aibonito. Este foro, tras celebrar una vista evidenciaría, resolvió que hubo justa causa para la referida tardanza de un día, pues ésta fue el resultado del gran volumen de recusaciones recibido por el periódico El Vocero de Puerto Rico.
Inconforme, el Comisionado Electoral del Partido Nuevo Progresista para el Precinto 066 de Orocovis (PNP) recurrió ante el Tribunal de Apelaciones, el cual revocó la determinación del foro de instancia por entender que en este caso el PPD no había demostrado justificación alguna para *943 la dilación reseñada. Además, el tribunal concluyó que en vista de que la notificación mediante edictos era nula, el único remedio que tenía el PPD era instar un nuevo proceso de recusación.
Insatisfecho con el dictamen, el PPD comparece ante nos. En síntesis, señala que notificó de lo ocurrido a la Comisión Local en el término de cinco días dispuesto por el Reglamento para el Trámite de Recusaciones. Además, ex-presa que la tardanza de un día no era atribuible a una falta de diligencia de su parte, pues se cumplió con presentar los edictos para publicación antes del término correspondiente de diez días. Por ello, aduce que la tardanza en este caso estuvo justificada.
Acogido el recurso como una petición de certiorari, y examinada la oposición presentada por la parte recurrida, procedemos a resolverlo, según lo dispuesto en la Regla 21 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A.
II
Como se sabe, la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de todos los ciudadanos al sufragio universal, en todos los procesos electorales, como uno de los valores constitucionales de la más alta jerarquía en nuestro país. En ese sentido, nuestra Carta Magna establece que el ejercicio del derecho al voto será igual, directo, secreto y libre de toda coacción. Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1. Con el fin de garantizar adecuadamente ese derecho, la Asamblea Legislativa aprobó la Ley Electoral de Puerto Rico, la cual establece que no se podrá anular la inscripción legal de un ciudadano como elector a no ser mediante sus disposiciones o de una orden judicial. Véase Art. 2.006 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3056.
Por otra parte, la Declaración de Propósitos de la Ley Electoral —la cual contiene los presupuestos básicos para el funcionamiento de nuestro sistema democrático— establece la necesidad de que los procesos electorales desean *944 sen en unas garantías de pureza electoral que permitan contar cada voto en la forma y manera como fue emitido, además de asegurar que las elecciones en Puerto Rico se conduzcan de manera ordenada y pacífica. Véase 16 L.P.R.A. see. 3002. En aras de lograr estos objetivos, el Art. 2.023 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3073, establece el mecanismo de recusación para eliminar a un elector del registro oficial y para evitar que aquellos que no tienen derecho a ser electores formen parte de éste. Así, pues, se establece un período de cuatro meses para recusar a los electores que no tengan derecho a votar en el precinto correspondiente. Dicho período comienza el 15 de enero y termina el 15 de mayo de cada año electoral.
El partido que interese recusar a un elector en particular debe notificarle personalmente con copia de la solicitud de recusación y acreditar, bajo juramento y apercibimiento de perjurio, haber realizado dicha gestión. Véase la See. 2.8 del Reglamento para el Trámite de Recusaciones, supra, pág. 10; P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 201 (1981). Por su parte, el Art. 2.12 del citado Reglamento, supra, permite que se publique un edicto con el fin de notificarles a aquellas personas que, a pesar de haberse realizado diligencias razonables a esos efectos, no pudieron ser emplazadas personalmente.
Sobre el particular, la citada Sec. 2.12 dispone que, una vez se acrediten las diligencias realizadas para notificarle al elector sobre el proceso de recusación instado en su contra, el presidente de la comisión local podrá autorizar la notificación mediante edictos. El edicto se publicará en el término de diez días a partir de la fecha cuando se reciba esta autorización. A su vez, deberá enviarse la citación a la vista correspondiente mediante correo certificado, en el término indicado, a la última dirección del elector que suija del Registro General de Electores.
Asimismo, la persona que diligencie la publicación del edicto tendrá cinco días para acreditar, ante la Junta de Inscripción Permanente que corresponda, el cumpli *945 miento cabal de la normativa anterior. Transcurrido ese período sin realizarse dicha acreditación, se entenderá desistida la solicitud de recusación. Por el contrario, si se acredita el cumplimiento con el trámite reseñado, se celebrará la vista de recusación en los diez días siguientes a la publicación del edicto. Los términos dispuestos en la sección del Reglamento para el Trámite de Recusaciones son de cumplimiento estricto. Véase P.P.D. v. Admor. Gen. de Elecciones, supra, pág. 200. A esos efectos, la See. 6.7 de dicho Reglamento, supra, pág. 26, establece que los términos establecidos en éste podrán ser variados por acuerdo unánime de los comisionados electorales o por justa causa en los casos meritorios.
Ahora bien, al considerar la existencia de justa causa en el contexto de las recusaciones de electores no puede perderse de vista que se trata de un procedimiento que busca limitar, aun cuando por unas justificaciones particulares, el derecho de un elector a votar en una elección. Por ese motivo, se debe constatar fehacientemente que las razones aducidas para haber incumplido con los términos de cumplimiento estricto en los procesos de recusaciones no sean meros argumentos sin sustancia que soslayen la importancia del derecho al voto en esta jurisdicción.
III
En este caso, el PPD solicitó la recusación de más de ochenta electores del Precinto 066 de Orocovis por entender que ya no residían en este municipio. Ante el hecho de que las gestiones para notificarles personalmente sobre este proceso no fueron exitosas, se solicitó la publicación de edictos. Sin embargo, aunque el PPD sometió su solicitud de publicación al periódico El Vocero de Puerto Rico en el término correspondiente, dicho rotativo no pudo colocar los edictos en la edición de 30 de mayo de 2008, última fecha para realizarla. Los edictos se publicaron finalmente al día siguiente; es decir, el 31 de mayo de 2008.
Tras considerar detenidamente la controversia, creemos *946 que el PPD presentó justa causa para la tardanza de un día en la publicación de los edictos en cuestión. En primer lugar, surge del expediente ante nos que no fue hasta el 2 de junio de 2008 que la Sra. Dolores Barreiro, Directora de Clasificados y Edictos del periódico, le notificó al PPD sobre la situación. Es preciso advertir que, a esa fecha, era prácticamente imposible solicitarle una prórroga al presidente de la comisión local para publicar los edictos. Cuando el PPD se enteró del retraso, el cual no guardó relación alguna con una falta de diligencia suya, ya el término para realizar la referida publicación había transcurrido.
Por otra parte, a pesar de que el PPD presentó la solicitud de publicación el 28 de mayo de 2008, el Tribunal de Primera Instancia concluyó que dicha espera estaba justificada, pues la tramitación del pago por los edictos y la realización de otras gestiones dirigidas a publicarlos eran actividades administrativas necesarias para lograr cumplir con los requisitos que impone la Ley Electoral de Puerto Rico al respecto. En este sentido, coincidimos con el foro de instancia, el cual tuvo ante su consideración prueba testifical sobre el trámite administrativo de rigor y resolvió, finalmente, que la notificación mediante edictos fue eficaz.
En atención a lo anterior, nos resta precisar cuál sería el remedio más adecuado para disponer de este caso. En vista del tiempo transcurrido entre la notificación mediante edictos y la suspensión de la vista para atender las recusaciones en controversia, y en consideración de la importancia del derecho al voto en nuestra jurisdicción, se ordena la publicación de unos nuevos edictos en el término de tres días a partir de la notificación de la sentencia. En dicha notificación se citará a una vista de recusación en el término de siete días a partir de la fecha de publicación de los edictos mencionados. A su vez, en conformidad con la See. 2.12 del Reglamento para el Trámite de Recusaciones, supra, el PPD deberá notificar por correo certificado la citación a la vista.
Por los fundamentos expuestos, se revoca la sentencia *947 emitida por el Tribunal de Apelaciones. En consecuencia, se devuelve el caso a la Comisión Local de Elecciones del Precinto 066 para que continúe con los procedimientos en conformidad con lo aquí resuelto.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez disintió con una opinión escrita.